That leads to our final case this morning, number 2415.6, LBT IP versus Uber Technologies. Okay, Mr. Howell. Good morning, Your Honors, and may it please the Court. The Board found unpatentability of all challenged claims based on a misreading of the Hashimoto reference, particularly Hashimoto's call signal and how the central system in Hashimoto at Step S35 evaluates whether the central system can communicate with the portable terminal. Based on that misreading, the Board incorrectly determined that Limitations 11D, 11E, and 11F, the only independent challenge claim, were obvious when they were not. Thus, LBT contends that this Court should reverse the PTAB's decision. First, I'd like to focus on Limitation 11D. All of the parties agree that Step S35 does an evaluation of availability. That's not disputed. That's a selection of what is really two signals. The first of those is the call signal that goes from the central system to the portable terminal. And then there's a second signal there. And those are not the claimed first and second signals. That's something different. The second signal is a response signal that goes back. The determination of availability is based at the central system in S35, and it's based on that response signal. It's not based on the call signal. That's not, again, Uber pointed to the first signal, the call signal, as what's claimed in the 855 patent. So that's what it is limited to on appeal. It's tried to pivot to other signals, but we really need to focus on that first call signal. And it's at Step S35, it's really the central system. There's three steps here. There's the call signal, there's the response, and then I guess there's a third signal, which I call the command signal. Yes, Your Honor. And before the Board, the parties didn't seem to distinguish very carefully between what's called the call signal and what I've now called the command signal. Well, Your Honor, I think there were some pretty clear distinguishings. One is Uber's. But if the command signal is the first signal, S36 is something that occurs at the tracking device, correct? Yes, S36 does occur in the tracking device. If they'd identified what I call the command signal, there wouldn't be a problem here. I'm sorry, Your Honor. If they had identified the commands, what I call the command signal, but I don't think it was called that at all, as the first signal, that would have been adequate, right? No, Your Honor, because, again, I think the selection is what occurs in S35. It's not just evaluating the bail. 36. No, Your Honor, S35. No, no, no, I'm talking about 36. I understand, Your Honor. The Board referred to both 35 and 36. Correct. But my point is that S36 is not selecting the signal. That's the limitation we're talking about. It's not necessarily just evaluating availability. It's then using that as a criteria. The limitation is selection criteria, referring to signal selection criteria. So in S36, when the portable terminal gets that request signal or the command signal, as you call it, it's not selecting that signal as being one on which the whole location determination is based. That determination is done. The whole thing is based on it. It's certainly the command signal, what I've called the command signal, is a feature that helps to determine location. It's part of the chain of location determination. That's right, Your Honor. It does help the system. But really what we're looking at is what selects the signal, what is the criteria, and that is done in S35. As Hashimoto tells us, and this is throughout columns 8 and 9 on Appendix 1183 and 84, it's the central system that's doing the checking and the judging and the commanding and the requesting. Those are the actions of selecting a signal. What the portable terminal does, it does not select a signal ever. It simply takes orders. And that's not the same thing. If you look to, and also, Your Honor, just to address your point, that command signal, that was never addressed by the board. It was not raised by Uber in the IPR proceedings below. The parties below didn't really distinguish between the call signal and the command signal. Your Honor, with respect, I believe they did. And you can see that both at petition page 25, and then you can see this even in Uber's appeal brief, the red brief at pages 17 through 18. It goes through the three signals. So the board clearly understood what signals it was referring to, and it just got it wrong. This was not a case of any kind of ambiguity or unclarity in the briefings below. It was that Uber had picked the call signal and then picked step S36. And that was that. And I'll find the petition at page 25 where this was argued. So this is Uber's petition. It's appendix 138. And what they tell you is the central system slash monitoring station transmits a call signal. The claimed first signal. So Uber there is very clearly identifying that it's calling that call signal the first signal. And then it says to the portable terminal to determine, and again it's referring to the central system determining, if the portable terminal slash tracking device can respond, that's that second signal, the response signal, and receive a command, that's the third signal for a position update. And then going on, again, it says when it has been determined that the remote terminal can receive the call, that's receiving the call signal at element S35, the central system commands. That's referring to your call signal. So that's Uber in the petition very clearly talking about the three different signals. And it very clearly only tells us that it's the first signal, the call signal that it's pointing to, and not the second or third. And that's why if we go back to the board's decision, the board's decision was very clear, too, that it was not relying on the command or the request signal. It was relying on that first call signal. On 149 in the petition, they say the call signal, first signal is evaluated in figure six, elements 35 and 36. So they started conflating the two. And that's right. And that's why there's not substantial evidence is because they took one signal, the call signal, and then said it was evaluated at S36 when it was not. The command signal is evaluated at 36, right? Yes, again, but that's not selected using a selection criteria at the portable terminal. At that point, S35 has already selected which signals to use. Again, all the parties agree that S35 performs a signal selection. S35 says one of two things. Either we follow the yes branch to the left, and then we have the three-signal process at the portable terminal, or alternatively, we go through that S39 branch down to the bottom. But the important point there is the signal selection criteria, the claim language, is referring to selecting which signals to use, and it's the central system that does all of that. If the call signal is received and responded to, it's the central system that says let's go down S35, and it's also the central system that says I'm going to send out this command signal, and you portable terminal are going to do what I said to do and using the signals that I selected. Again, that's the central system. That's not the portable terminal doing that. And again, it's just rooted throughout columns 8 and 9 where the central system is judging and checking. That's not language that's used by the portable terminal. As Your Honor has characterized it, it's receiving a command. It's being told what to do. It's not getting to select anything. The board seemed to be relying on this factor of availability with respect to each signal, and it seems to me that that is sort of a critical point with respect to this call signal. Was the board correct in analyzing these signals on the basis of whether they were available? I think the board analyzed the availability part correctly, but where the board faulted is it treated availability itself and availability determination as sufficient. But the issue is we're looking at signal selection criteria, not just availability. So signals can be available or unavailable, but the question is which part of the system is making determinations about the flow of the system based on those signals? Which component is determining which signals are going to matter in terms of the location process? It would seem as though the tracking device is making that determination with respect to the command signal. Only for the claimed second, third, and fourth signals, not that first command signal. But if the first command signal is not available, then the second, third, and fourth signals are not examined. Sure, but in that case, the portable terminal does nothing, right? The central system has done everything. So you still don't have the selection criteria being done. S36 is at the tracking device. Well, the issue with Step S... It is. Yeah, it is. Correct, Your Honor. I don't dispute that. The issue is that at Step S36, that selection has already been made. The portable terminal isn't determining that it should receive the request signal. That's the central system that's making that determination. That's what's selecting the importance of the request signal, right? It's the central system that determines whether the request signal should be sent or whether the path should go through to S39. And unless Your Honors have any other questions on 11D, I'll turn to 11E. The quick point on 11E is that the board was simply incorrect when it said the dispute was undisputed, or said the limitation was undisputed. They discussed that under 11C. They did discuss some of it, Your Honor, but they didn't discuss two key points that I want to raise, Your Honors. They did not discuss the unavailability of the first signal. And the issue is when the board said that this limitation was not disputed, it pointed only to Uber's petition at Appendix 155 through 157. And that's the 11E section from Uber's petition. And the analysis that Uber sets out there is with respect to the unavailability. It's not with respect to availability. So all of those points about 11C that relate to availability, that's not Uber's argument in the petition. That's Appendix 155 through 157. And to your point, Your Honor, the issue is if the board had said, and we addressed these issues elsewhere, it would have made a lot more sense. The problem is the board said that it was not disputed. It didn't cite to those other 11C limitations. And the bigger problem is it left unaddressed, number one, you have an unavailable call signal. You can't select that and you can't determine location based on that. Never address that argument, even though that's the focus of the parts of the petition that it cited at Appendix 155 through 157. Those points are unaddressed. It's also unaddressed how, then, you can take an unavailable signal, go through S39, and still meet all of the other surrounding limitations. And, Your Honors, I see that I'm out of time. I'm happy to answer any other questions that you may have. Otherwise, I'll reserve my time. Thank you, Your Honor. Thank you, Mr. Fink. May it please the Court, William Fink for Uber. Your Honors, LBT's arguments seem designed to deconstruct the record and confuse issues that aren't very complicated. So I'll just try to clarify the issues disputed on appeal. So the three limitations you heard. Is the first signal the call signal or the command signal? Uber argued that the first signal is the call signal and the Board agreed with that. But S35 is not at the tracking device, which is where the call signal is evaluated. That's correct. So S35 is determined after the tracking device responds to the call signal. So then there is a command sent from S35 to S36. S36 is waiting in a loop, waiting for a command to initiate the tracking. And so S36 happens only after a call signal is received and responded to, Your Honor. And that was, essentially you could argue that there were two signals. Uber didn't try to make that. That would have been more than necessary to satisfy the claim. So Uber said, okay, well, the first thing that has to happen is there's a call signal and there's a response. And the Board acknowledged that in their final written decision that before you even get to S35, or at the point of S35, there is a call and it's been responded to. So that's the evidence that Uber pointed to. I think, Judge Dyke, to your point, and I don't know if this was your point, but I think it's fair to say the arrow going from S35 to S36 in Figure 2 could have also, that's a command signal, and that also could have been a first signal. It's not necessary to go there, but it is the beginning of the next step in the process, which is to have the tracking device search for three additional signals. And that's in Figure 2. And I don't think the Board, and I don't think LBT seriously disputed that availability of a signal is a selection criteria in Claim 11D. So with respect to Limitation 11E, first of all, the Board addressed all of LBT's arguments on the merits of Claim 11E, where it found them, and that was when addressing the 11C arguments. And so what it says with respect to 11E, when it got to 11E, was to say, you know, we don't see additional arguments. We accept the evidence, and they moved on, because there wasn't anything presented as a standalone argument under 11E. So on the merits, the Board's fact findings on this limitation are similarly supported by substantial evidence. Now, one thing that LBT raised was that 11E seemed to rely on Uber's argument that the signal was unavailable and what happens when the signal is unavailable, and that's just not true. And it wouldn't make sense to rely on an unavailable signal. The point of the tracking device is to first get a command or first get a call and a command to initiate tracking, and that's all done entirely on the left side of Figure 6 at the tracking device. And to start that, it's available, and the Board understood that it was relying on an available signal. It does this at Appendix 44, for example. Patent owner concedes if we accept petitioner's arguments concerning a call signal, as we do. And it's referring to a four-signal scenario. In this scenario, Hashimoto teaches the consumption and analysis of all four signals in certain situations. So it's also at Appendix 46. Hashimoto does teach determining at the remote terminal whether a call signal is available. Whether or not arrival is possible is judged depending on whether or not the portable terminal has sent a response signal in reply to a call signal. So that's happening at the portable terminal. And then, finally, for—the patent owner didn't raise 11F here, but the Board's findings there are supported by substantial evidence. And so I think unless there are other questions, I— Okay. Thank you. Mr. Howell. Thank you, Your Honors. Two brief points. One, I think you heard Uber acknowledge that they pointed to the call signal in their petition, and that's what they had relied on. The call signal is not evaluated at S36 or S37, as the Board incorrectly found. There's no substantial evidence backing that point. Reversal on that point has to be warranted. The only times the call signal is evaluated is either at Steps 35 or before. Uber didn't point to those steps, and that's not what the Board found at all. That's a lack of substantial evidence that requires reversal. Now, the second point is on 11E. The Board was very specific in its order. It said that this was not a disputed element when it was, and it was raised at Appendix 364 through 365. That's Uber's patent owner response, and it was also raised at Appendix 470 and 471. And it was also briefly addressed at the end of oral argument—at the end of the oral argument. And we asked the Board if they had any questions, and they said no. And that was the time to figure out if 11E was disputed. One more quick point I want to make there. I think I heard Uber acknowledge that it would not make sense to rely on an unavailable signal, but that's the problem with what the Board did. The Board was free to cite any part of Uber's petition or the earlier proceedings in that 11E section on Appendix 47, but it didn't. It cited just one section of Uber's brief, the Uber 11E section, which is found at Appendix 155 to 157, and the Board didn't cite any of the other pages that Uber raised just now, Appendix 47, 48. None of those pages were addressed. It was only in that one section on 11E, and in that part, it only talked about Uber's petition on 11E. That's it. No other pages. Unless there's any other questions, Your Honor, thank you. Okay, thank you. Thanks to both counsel and cases. That concludes our session for this morning.